IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| NAUREEN BROOKS, Plaintiff, | * * * * | |
| v. | * * * | Civil Action No. 11-cv-02370-AW |
| PRESTIGE FINANCIAL SERVICES, INC., *et al*, Defendants. | * * * | |

## Memorandum Opinion

Presently pending in this case is Defendant Prestige Financial Services, Inc. ("Prestige")'s Motion to Stay Proceedings and to Compel Arbitration. Doc. No. 21. The Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons described below, the Court will grant Defendant's motion.

## I.     FACTUAL & PROCEDURAL BACKGROUND

The following facts are either not in contention or are viewed in a light most favorable to Plaintiff. On or about June 2, 2008, Plaintiff Naureen Brooks ("Brooks") purchased a 2005 Honda Accord. The purchase was financed by Defendant Prestige. *See* Am. Compl. ¶ 5-7. At the time of the purchase, Plaintiff executed a Retail Installment Sale Contract containing an arbitration clause. Although Plaintiff executed the agreement with the car dealership, the dealership immediately assigned the contract to Defendant. In June 2011, Plaintiff was in default of her loan agreement with Defendant. *See* Am. Compl. ¶ 7-9. On June 21, 2011, Plaintiff filed a

petition under Chapter 13 of the Bankruptcy Code. On July 20, 2011, Plaintiff filed this action in the Circuit Court of Maryland for Calvert County. *See* Doc. No. 1. On August 24, 2011, Defendant removed this action to this Court. *See id.* In her Amended Complaint, Plaintiff alleges various violations of the Maryland Consumer Protection Act and the common law of Maryland. *See* Am. Compl. These claims relate to Defendant's alleged conduct in its attempt to collect on its loan.

After removal to this Court, Defendant gave the Court Notice of Stay of this litigation pending Plaintiff's bankruptcy under Chapter 13 of the Bankruptcy Code. Doc. No. 11. Plaintiff moved to strike the Stay, *see* Doc. No. 12, and Defendant moved to dismiss Plaintiff's Complaint on the ground that this cause of action vests with the bankruptcy estate and only the trustee may bring a lawsuit, or in the alternative, to stay this action pending completion of Plaintiff's bankruptcy proceedings, *see* Doc. No. 14. The Court granted Plaintiff's motion to strike Defendant's Notice of Stay and denied Defendant's motion to dismiss or stay this action. *See* Doc. No. 19. The Court contemporaneously issued a Scheduling Order, commencing the discovery process. *See* Doc. No. 20.

About two weeks thereafter, Defendant moved to compel arbitration pursuant to the parties' arbitration agreement and to stay proceedings in this matter. *See* Doc. No. 21. Plaintiff argues that the arbitration agreement is invalid and inapplicable to Plaintiff's claims in the instant action, and that Defendant waived its right to arbitrate by engaging in pretrial activity inconsistent with an intent to arbitrate, prejudicing Plaintiff.

**II.     STANDARD OF REVIEW**

The parties do not dispute that the Federal Arbitration Act ("FAA") applies to the contract between Plaintiff and Defendant. Contracts governed by the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) (citations omitted).

The Court decides as a preliminary matter whether the dispute should be resolved through arbitration, and to so decide, "engages in a limited review to ensure that the dispute is arbitrable-i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 453 (4th Cir. 1997) (citation and quotation omitted). In doing so, the Court applies state contract law principles, unless those principles are only applicable to arbitration provisions. "'State law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the text of § 2].'" *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 685 (1996) (citations omitted). "When an issue in a judicial proceeding is referable to arbitration, the FAA requires the court, upon a motion of one of the parties, to stay the proceeding until that issue is arbitrated." *Oumar Dieng v. College Park Hundai*, Civ. No. DKC 2009-0068, 2009 WL 2096076, at *3 (D. Md. July 9, 2009).

**III.   ANALYSIS**

The arbitration agreement between Plaintiff and Defendant is part of the Retail Installment Sale Contract (the "RISC") Plaintiff signed on June 2, 2008. The car dealership assigned the RISC to Defendant at the time of the purchase for purposes of financing the vehicle. The Court finds that the provision at issue constitutes a valid agreement to arbitrate and is unpersuaded by Plaintiff's arguments that the arbitration agreement is unconscionable. Additionally, the Parties' dispute falls within the scope of the arbitration agreement. Finally, although Defendant delayed filing its motion to arbitrate, waiting until commencement of the discovery process, this delay was not so egregious as to prejudice Plaintiff and operate as a waiver of Defendant's right to arbitrate.

   A.   <u>Validity of Agreement to Arbitrate</u>

Defendant argues that the arbitration provision of the contract Plaintiff signed constituted an enforceable agreement to arbitrate Plaintiff's statutory claims. Plaintiff contends that the arbitration agreement is invalid because the agreement is procedurally and substantively unconscionable. The Court addresses these claims below and finds that the agreement to arbitrate is valid and enforceable.

Maryland contract law on unconscionability contains both procedural and substantive components. The Fourth Circuit has explained the characteristics of each as follows:

> Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief (for instance, "I have the right to cut off one of your child's fingers for each day you are in default"), while procedural unconscionability deals with the process of making a contract-"bargaining naughtiness" (for instance, "Just sign here; the small print on the back is only our standard form"). Each of these branches of unconscionability has common-law cousins; procedural unconscionability looks much like fraud or duress in contract

> formation, and substantive unconscionability reminds us of contracts or clauses contrary to public policy or illegal.

*Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir. 1989) (quoting J. White & R. Summers, U.C.C. § 4-3, at 186 (3d ed. 1988) (footnote omitted)).

### 1. Procedural Unconscionability

Plaintiff contends that the arbitration agreement is procedurally unconscionable because the contract is a standard form used for installment sales in which there are no provisions specific to her situation. Plaintiff also contends that the arbitration provision is located on the back of the second page of the agreement, and one of the areas where Plaintiff was directed to sign includes the phrase "including the arbitration clause on the reverse side." Finally, Plaintiff contends that the arbitration agreement is a contract of adhesion; it was drafted unilaterally by the dealership, and had she refused to sign it or disputed the arbitration provision, she would have been denied the car or forced to litigate the issue.

A contract of adhesion has been defined as one that is usually prepared in printed form, "'drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms.'" *Walther v. Sovereign Bank*, 872 A.2d 735, 746 (2005) (quoting Rest. (Second) of Conflict of Laws § 187, cmt. b). However, a contract of adhesion is not automatically deemed unconscionable. Rather, "[a] court will . . . look at the contract and its terms with some special care . . . but it will not simply excise or ignore terms merely because . . . they may operate to the perceived detriment of the weaker party." *Id.* (quoting *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (1990)).

Even if the Court was to find that the agreement at issue was a contract of adhesion, the arbitration provision is procedurally conscionable. First, the fact that the contract is a standard form does not suggest its unconscionability where the contract was one of mutuality that does not favor Defendant. Second, as Plaintiff states, the arbitration clause is on the second page; it is not buried in the middle of a lengthy document. Moreover, the provision uses bold and capitalized lettering and is conspicuous. Although no bargaining took place between the parties, Plaintiff does not contend that she attempted to bargain and was told that these were the only terms under which financing would be extended.  Plaintiff also does not contend that she was rushed to sign the agreement so that she did not have a chance to read and consider the terms. Accordingly, Court cannot find procedural unconscionability here.

2.     Substantive Unconscionability

Plaintiff argues that the arbitration agreement is substantively unconscionable because it imposes excessive costs on Plaintiff which, given her ongoing bankruptcy proceeding, she is unable to afford. Plaintiff acknowledges that the arbitration agreement requires Defendant to advance Plaintiff's "filing, administration, service or case management fee[s] and [the] arbitrator or hearing fee all up to a maximum of $2500." Doc. No. 21 Ex. A at 4. However, Plaintiff contends that, assuming the parties utilize the American Arbitration Association ("AAA"), its Commercial Fee Schedule suggests that she could be responsible for several thousand dollars over that amount.[1] Plaintiff notes that none of these costs include the fees Plaintiff must expend

---

[1] Plaintiff contends that she may choose between either a Standard or Flexible Fee Schedule. The Standard Fee Schedule requires Plaintiff to pay an initial $1,850 filing fee and a $750 final fee. Under the Flexible Fee Schedule, Plaintiff would pay $850 for an initial filing fee, $1250 for a proceed fee, and $750 as a final fee. Plaintiff contends that she would also have to put a deposit down for one-half of the arbitrator's compensation, which could be between $250 an hour and $500 an hour, or more.

on her own attorney, experts, and witnesses. Plaintiff contends that the monetary burden of arbitration will deter her right to obtain the statutory relief she seeks.

The party seeking to invalidate an arbitration agreement on the grounds that it is too expensive bears the burden of showing the likelihood of incurring such costs. *Green-Tree*, 531 U.S. at 92. Plaintiff has not met her burden here. First, although the Court is aware that Plaintiff has filed for bankruptcy, Plaintiff has not provided any more detailed evidence as to her financial ability to pay the arbitration costs, measured against a baseline of her expected costs for litigation.

Moreover, Defendant has adequately shown that under the applicable AAA fee schedule for consumer arbitration that the cost borne by Plaintiff will be much less than she fears. Defendant has attached the AAA consumer arbitration schedule of costs, which makes clear that "If the consumer's claim or counterclaim is greater than $10,000, but does not exceed $75,000, then the consumer is responsible for one-half the arbitrator's fees up to a maximum of $375." *See* Doc. No. 28 Ex. 1 at 2. Plaintiff is claiming actual damages of $26,000 and punitive damages of $50,000; however, the fee schedule makes clear that only actual damages are considered in determining whether Plaintiff's claims fall within the $10,000-to-$75,000 range. An e-mail with an AAA manager confirms that Plaintiff is limited to a $375 responsibility. *See* Doc. No. 28 Ex. 2 at 1. Additionally, under the Parties' arbitration agreement, this $375 would be Defendant's responsibility as part of the $2,500 portion of Plaintiff's arbitration costs Defendant is required to pay. Plaintiff's argument that her attorney, expert, and witness costs are not included in the arbitration fee is unavailing, since these expenses would presumably be borne in federal court as well. In sum, Plaintiff has not shown that arbitration costs would deter her from pursuing her statutory claims, and the Court accordingly finds no substantive unconscionability.

B.     Coverage of the Instant Dispute

Plaintiff argues that even if the Court finds the arbitration agreement to be valid, it does not apply to Plaintiff's claims because Defendant's debt collection practices did not arise out of the original financing contract between the parties. The arbitration provision at issue states that:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to . . . this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*See* Doc. No. 21 Ex. 2 at 4. The Court finds this language to be quite broad, and certainly expansive enough to cover the claims at issue, especially given the presumption under U.S.C. § 9 in favor of arbitration.

The Fourth Circuit defines "arising out of or relating to" as "every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute." *Wachovia Bank, N.A. v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006) (quotation and citation omitted). Plaintiff contends that her claims regarding Defendant's debt collection practices do not bear a significant relationship to the Parties' contract because Plaintiff is neither alleging breach of that contract nor looking to the contract terms to support her claims. In her discussion of the "significant relationship" test, Plaintiff cites to several cases which, as she acknowledges, are all easily distinguishable from the instant action because the dispute was either related to particular terms or provisions of a contract, or the parties to the contract were sophisticated parties. *See*, *e.g.*, *J.J. Ryans & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d

315 (4th Cir. 1988). As a Florida federal district court found in interpreting a virtually identical agreement where the plaintiff had brought similar debt collection practices claims:

> [T]here is no question that [the plaintiff's] claims relate fairly directly to performance of contractual duties. Under the original financing contract, [the plaintiff] had a duty to pay its note to [the assignor], and his claims relate to the actions of [the] assignee, in collecting that debt. Moreover, [the plaintiff] could not even maintain this action without reference to the financing contract because the contract is necessary to show that [the plaintiff] is a "consumer" and that the underlying 'debt' exists- two prerequisites to filing suit under the [Fair Debt Collection Practices Act] and [Florida Consumer Collection Practices Act].

*Bolanos v. First Investors Servicing Corp.*, No. 10-23365-CIV, 2010 WL 4457347, at *2 (S.D. Fla. Oct. 29, 2010). In the instant action, Plaintiff's claims relate to Defendant's alleged debt collection activities. Those alleged activities constitute Defendant's attempts to enforce its rights under the contract, and at the very least constitute relationships relating to that contract. Accordingly, the Court finds that the arbitration agreement applies to Plaintiff's claims.

C.   Waiver

Default or waiver occurs where "the party seeking arbitration 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004) (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). "[T]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*." *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987) (emphasis added)).

Plaintiff argues that Defendant has engaged in substantial trial-oriented activity, from removing this action from the Circuit Court for Calvert County to filing a motion to dismiss or stay this action. Plaintiff contends that the Court has already issued a Scheduling Order and that she has already submitted discovery requests to Defendant. Finally, Plaintiff contends that her legal position has been damaged as she has had to respond to Defendant's motion.

The Court finds that these delays are insufficient to establish waiver. Although Defendant filed a motion to dismiss, it was based not on the merits of Plaintiff's claims but solely on whether Plaintiff was the proper litigant to bring her claims or whether the action instead belonged to the bankruptcy trustee. The Court has not considered briefings or evidence by the parties relating to Plaintiff's underlying claims. Although Plaintiff has submitted discovery requests to Defendant, Defendant brought the instant motion only about two weeks after the Court issued the Scheduling Order. As this Court has held, limited participation in discovery is insufficient to meet the high burden required to show a waiver of the right to arbitrate. *See Sedelnikova v. The Cheesecake Factory Restaurant, Inc.*, No. 09-2398-AW, 2010 WL 2367387, at *7 (finding no waiver where Plaintiff had already "drafted interrogatories and document requests and devoted 'significant time' to drafting discovery responses and reviewing documents in preparation for scheduled depositions"). Accordingly, the Court finds that Defendant's delay in filing its motion to arbitrate does not constitute a waiver of its right to arbitrate.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and stay this case is

granted. A separate Order will follow.

<table>
<tr><td>December 8, 2011</td><td>/s/</td></tr>
<tr><td>Date</td><td>Alexander Williams, Jr.<br>United States District Judge</td></tr>
</table>